**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| NORMAN TIMBERLAKE, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:06-cv-1859-RLY-WTL |
| J. DAVID DONAHUE, Commissioner, | ) |
| Defendant. | ) |

**Memorandum Concerning Issues and Proceedings at Trial**

The court issues this *Memorandum* to review the issues at trial and provide an outline of the analysis the court expects to undertake.

The motions which are pending at the time this Memorandum is issued are (1) the plaintiff's motion for preliminary injunction, and (2) the defendant's motion for judgment on the pleadings. As used herein, "plaintiff" refers to Norman Timberlake, and "defendant" or "Superintendent" refers to Indiana State Prison Superintendent Ed Buss.

The case remains set for trial in Indianapolis commencing at 9:30 a.m. on Wednesday, January 17, 2007. The trial setting was issued in conjunction with setting the motion for preliminary injunction for hearing at that time and consolidating trial on the merits with the hearing on the motion for preliminary injunction.

Timberlake's claim in this case is that the combination of drugs to be used by the Superintendent, in the absence of trained personnel and with no monitoring of Timberlake's condition once the procedure is underway, creates a serious risk that the drugs will not be properly administered and that "[a]dministrative errors could result, and demonstrably have resulted, in inmates retaining consciousness and suffering severe pain and torture during their execution." He seeks only injunctive relief in this action. His claim is asserted against the Superintendent in his official capacity only. *Greenawalt v. Indiana Dept. of Corrections,* 397 F.3d 587, 589 (7th Cir. 2005)(*citing Luder v. Endicott,* 253 F.3d 1020, 1024-25 (7th Cir. 2001)). The relief Timberlake seeks through this lawsuit is an injunction prohibiting the Superintendent from executing Timberlake by the proposed means of lethal injection. He does not challenge either his conviction or his sentence and does not seek to prevent the State of Indiana from executing him by lethal injection in a lawful manner.

The issues which arise from this claim are: 1) whether the present challenge has been timely brought or whether Timberlake has delayed unnecessarily in seeking relief, and 2) whether Timberlake shows a significant probability of success on the merits. The Superintendent's motion for judgment on the pleadings is directed to the first of the foregoing issues.

Timberlake's conviction and path through various courts from trial through habeas is chronicled in this court's decision addressing his most recent petition for writ of habeas corpus. *Timberlake v. Buss,* No. 1:06-cv-1841 (S.D.Ind. January 4, 2007). Reciting that path again is unnecessary, except for noting that his execution has been set to be carried out before dawn on Friday, January 19, 2007.

The threshold inquiry here is to review the proper remedial scheme for the relief Timberlake seeks. "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C. § 1983." *Muhammad v. Close,* 540 U.S. 749, 750 (2004). As was the case in *Hill v. McDonough,* 126 S. Ct. 2096, 2101, 2103 (2006), this § 1983 action is controlled by the holding in *Nelson v. Campbell,* 541 U.S. 637, 644 (2004). Here, as in *Nelson* and in *Hill,* Timberlake's action if successful would not necessarily prevent the State from executing him by lethal injection. The complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin the Superintendent from executing Timberlake by the proposed means of lethal injection. This confirms that Timberlake's challenge is properly brought pursuant to 42 U.S.C. § 1983, rather than an action for habeas corpus relief, and the Superintendent does not argue otherwise.[1]

*Hill* and *Nelson* emphasize two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits. *See Hill,* 126 S. Ct. 2096; *Nelson,* 124 S. Ct. at 2126.

In *Nelson,* the Supreme Court set out the factors relevant to granting a stay in the context of an impending execution:

> A stay is an equitable remedy, and equity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempts at manipulation. Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

---

[1] "A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the 'fact' or 'validity' of the sentence itself--by simply altering its method of execution, the State can go forward with the sentence." *Nelson v. Campbell,* 541 U.S. 637, 644 (2004).

*Nelson,* 541 U.S. at 649-50 (citations and quotations omitted). The Supreme Court has stressed the need to be wary of obvious dilatory tactics and to guard against "abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process." *Gomez v. United States Dist. Ct.* 503 U.S. 653, 654 (1992)("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief."). With its issuance of *Hill,* the Supreme Court reiterated a state's "important interest in the timely enforcement of a sentence" and emphasized that "the federal courts can and should protect states from dilatory . . . suits." *See Hill*, 126 S. Ct. at 2104. The Court also highlighted the equitable powers of the federal courts "to dismiss suits [that are] speculative or filed too late in the day." *Id.*; *see also Smith v. Johnson,* 440 F.3d 262, 263 (5th Cir. 2006).

As to the merits of his request for injunctive relief, Timberlake has the burden of proving by a clear showing that a balancing of the equities falls in his favor. *See Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Ebay, Inc. v. Mercexchange*, LLC, 106 S. Ct. 1837, 1839 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court . . . ." *Id.* When applying this standard, Timberlake's claim must be separated into two categories: first, his challenge to the protocol in general; second, the application of the protocol to him.

Under Indiana law, death sentences shall be carried out by "intravenous injection of a lethal substance or substances . . . in a quantity sufficient to cause the death." IND. CODE § 35-38-6-1(a). "[A] typical lethal injection protocol consists of administering a succession of three drugs to effect the inmate's death. The first one, sodium pentothal, acts as an anesthetic, while the second, pancuronium bromide, paralyzes the body and prevents the inmate from moving or otherwise showing pain or discomfort. The final chemical, potassium chloride, is what stops the heart and actually causes death." *Hill v. McDonough,* 2006 WL 2556938 (N.D.Fla. September 1, 2006) (citing a study published in *The Lancet,* "Inadequate Anaesthesia in Lethal Injection for Execution," Vol. 365, *The Lancet* 1412-14 (April 16, 2005)).

The protocol which will be used in the impending execution is established in Operation Directive ISP 06-26 (hereafter "Directive 06-26") and in select Indiana statutes. Timberlake has claimed that Directive 06-26 could cause him severe pain and thereby violate the Eighth Amendment's prohibition of cruel and unusual punishments. The pivotal question concerning the merits of this claim is not what is optimally desirable, as, for example, in a surgical setting, but rather what is minimally required to avoid a violation of the Eighth Amendment. S*ee generally Gregg v. Georgia,* 428 U.S. 153, 173 (1976) (holding that punishments are cruel when they "involve the unnecessary and wanton infliction of pain"); *In re Kemmler,* 136 U.S. 436, 447 (1890) (holding that "[p]unishments are cruel when they involve torture or a lingering death").

As a result of the conference conducted with the parties on the afternoon of January 16, 2007, the following matters were addressed, resolved, and directed:

1. The defendant's motion for reconsideration filed on January 12, 2007, is granted to the extent that any witness testifying as a member of the execution team will testify in such a manner as to preserve their anonymity and that counsel for the plaintiff will endeavor to eliminate or reduce the desired need for any such testimony through an interview to be conducted between counsel and the Superintendent later in the afternoon of January 16, 2007. The scope of the interview shall be as discussed at the conference and counsel for the defendant may, of course, participate in and be privy to that interview. This also addresses the plaintiff's concern with incomplete discovery.

2. Counsel for the plaintiff shall report on January 16, 2007, following the interview just outlined, what execution team members remain needed, from the plaintiff's perspective, at trial. Any such member(s) will be made available by the Superintendent to testify at trial, but will be identified solely in the manner already noted in the course of discovery. The testimony of such individuals is likely to commence at approximately 11:15 a.m., Indianapolis time.

3. An audio-only feed of the trial shall be made accessible to the plaintiff at the Indiana State Prison if reasonable arrangements for that can be made.

4. The court has arranged for a complete transcript of the trial to be available by the close of the day on the day of trial. The parties are to continue to cooperate regarding the exchange of witness and exhibit lists and in any other fashion which will permit the trial to proceed in an efficient fashion.

5. The plaintiff will call as his first group of witnesses attorneys of inmates who have been executed by the State of Indiana in the recent past. One such attorney, Mark Earnest, will be permitted to testify telephonically from New Mexico.

6. The Superintendent's testimony is expected to begin at approximately 10:30 a.m., Indianapolis time, followed by the testimony of any member of the execution team called by the plaintiff, and followed in turn by the testimony of Barry Nothstine, an employee at the Indiana State Prison.

7. The court will take a noon recess and will re-convene when Dr. Heath is available. The Honorable Teresa Harper will then testify and conclude the plaintiff's case.

8. The defendant will then call Dr. Amos, medical director of the Indiana Department of Correction, and in the absence of any rebuttal evidence the parties will rest.

9. The parties will be permitted ½ hour per side for final arguments, which are expected to begin at approximately 3:00 p.m., Indianapolis time.

10. No videoconference link other than with the Indiana State Prison is anticipated or feasible at this point.

**IT IS SO ORDERED.**

Date:  January 16, 2007  

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Stephen R. Creason
INDIANA STATE ATTORNEY GENERAL
stephen.creason@atg.in.gov

Betsy M. Isenberg
INDIANA STATE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Thomas D. Quigley
INDIANA STATE ATTORNEY GENERAL
thomas.quigley@atg.in.gov

Brent Westerfeld
bwesterfeld@wkelaw.com

Lorinda Meier Youngcourt
EVANS & YOUNGCOURT
lmyoungcourt@hughes.net

Court Reporter

Courtroom Deputy Clerk